# Bubb, Appellant, *v.* Parker & Edwards Oil Company.

*Contracts—Construction—Oil and gas lease—Ambiguous terms —Parol evidence—Custom—Bill in equity—Injunction refused.*

1. In construing an indefinite or ambiguous contract, the construction placed upon it by the parties themselves is to be considered, and to this end it may be shown by declarations of either party that what such party understood at the time of its execution to be the scope and purpose of the contract is at variance with the construction that such party seeks to establish when the matter becomes the subject of subsequent litigation.

2. In a suit in equity to enjoin defendants from operating a gasoline plant on land which they held under an oil and gas lease from plaintiff's predecessors in title, it appeared that subsequent to the execution of the lease, plaintiffs conveyed to one of defendants under whom the other defendant held all the waste gas produced and saved from wells that were being operated under the lease, "together with all the rights necessary to the use and enjoyment of the same." Defendants erected a gasoline extraction plant and used the waste gas for the extraction of gasoline. Plaintiffs offered parol evidence to prove that after the agreement conveying the waste gas was prepared but before it was signed, defendants stated that its purpose was to enable them to use the waste gas for the operation of gas engines to increase the flow of oil from the wells then in operation, and that upon the strength of this assurance plaintiffs signed the agreement. *Held,* the lower court erred in excluding such evidence.

3. In such case where it appeared that when plaintiffs made the agreement the manufacture of gasoline from waste gas was in its infancy, so that there could have been no certain, uniform and notorious custom affecting grants of waste gas, it was error for the court, over plaintiff's objection, to permit witnesses to state what in their opinion would be included under such a grant of waste gas, and to testify to a particular custom by which the contract was to be construed.

4. In such case it was reversible error to exclude evidence to show that defendants were operating the plant to extract gasoline from oil piped from an adjoining property; such evidence was admissible to show how the plant was being used so that the court could determine whether it was being used in the manner contemplated by the parties to the contract.

Argued Oct. 18, 1915. Appeal, No. 203, Oct. T., 1915, by plaintiffs, from decree of C. P. Allegheny Co., April T., 1915, No. 986, in equity, refusing injunction, in case of George S. Bubb, William C. Bubb, Sarah B. Shaeffer, Clara A. Bubb, Charles K. Brown, Guardian of the Estates of Edward J. Bubb, III., Mildred J. Bubb, and George W. Bubb, Minors, v. The Parker & Edwards Oil Company, a Corporation, and Spang & Company, a Corporation. Before MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Reversed.

Bill in equity for an injunction. Before BROWN, J.

The opinion of the Supreme Court states the facts.

The court on final hearing dismissed the bill. Plaintiffs appealed.

*Error assigned,* among others, was the decree of the court.

*Frederic W. Miller,* with him *T. H. Philips,* for appellants.

*S. Leo Ruslander,* with him *A. Leo Weil* and *Charles M. Thorp,* for appellees.

OPINION BY MR. JUSTICE STEWART, January 3, 1916:

The plaintiffs' predecessors in title conveyed in 1896 to one T. N. Barnsdall the exclusive right to mine for and produce petroleum and natural gas from, and the exclusive possession of, so much of sixty-three acres of the land described as might be necessary therefor. This lease—for such it was—was assigned to the Parker & Edwards Oil Company some time prior to 1911. On 18th April, 1911, the plaintiffs then being the owners of the premises, conveyed to the oil company, its successors and assigns, all their right, title, claim and interest in and to all the casing head or waste gas produced and saved from wells that had been drilled upon and were

being operated under the above lease, together with all the rights necessary to the use and enjoyment of the same. The oil company, the same day, contracted with George A. Spang, giving to Spang the right to construct and maintain a gasoline extraction plant upon the premises, Spang to return said casing head gas after the extraction of the gasoline therefrom to the oil company, and to pay a certain compensation to the oil company for the privilege of extracting the gasoline. Under this contract Spang entered upon the plaintiffs' land in the spring of 1911, erected his plant thereon, and has continued to operate the same until the present time, the plant consisting of tanks, compressors, a loading platform, and a system of connecting pipes, the whole covering between one and two acres of ground. In February, 1915, the plaintiffs filed their present bill complaining that the defendants had erected and were operating their gasoline plant without any legal right, and praying for an injunction to restrain further maintenance and operation of the same, with other relief. Issue was joined and much evidence taken. The proceeding resulted in a dismissal of the plaintiffs' bill and we have this appeal from the decree. The contention of the defendants is that in doing what plaintiffs complain of, they were lawfully exercising the rights to which they were entitled under the contract with the plaintiffs of 19th April, 1911, whereby they acquired the plaintiffs' right, title, interest and claim of, in and to all the casing head or waste gas produced or saved from wells that had been drilled upon and were being operated under said agreement or lease, together with all the rights necessary to the use and enjoyment of the same. The plaintiffs insist on a construction of the agreement that would limit the use and enjoyment of plaintiffs' land to whatever was necessary to the operation of gas engines in connection with suction pumps, or the operation of other mechanical appliances, at or near the place of production of the gas, for the heating

of boilers in connection with the operation of the wells, and for general heating purposes mechanical or domestic upon or near the place of production.   This states the whole question involved, and, as will be seen it can be decided only as a construction of an admittedly ambiguous contract is determined upon.   The agreement being in writing it is for the court to construe it, by the aid of certain rules which the law has invented for such purpose.   One paramount rule of construction to which all others are subordinate is to ascertain the intention of the parties, and to give effect to that intention if it can be done consistently with legal principles, for the reason that the parties should be bound by what they intended to be bound by, and no more.   To this end the way is open for the admission of parol evidence; not that the written contract may be altered, varied or contradicted in its terms, but that the court may place itself in the same situation as the parties who made the contract so as to view the circumstances as they viewed them, and be better able to judge of the meaning of the language of the contract.   A corollary to this rule is that in determining an indefinite or ambiguous contract the construction placed upon it by the parties themselves is to be considered, and to this end it may be shown by declarations of either party that what such party understood at the time to be the scope and purpose of the contract is at variance with the construction that such party seeks to establish when the matter becomes the subject of subsequent litigation.

The following offer was made on the part of the plaintiffs:

"I offer to show by this witness, that before this agreement, Exhibit B, was signed by the above heirs, he took the matter of the execution of this agreement up with the representatives of the Parker & Edwards Oil Company, and was assured, as counsel for the above heirs and their representatives in this behalf, that the purpose of this agreement was to enable them to use the casing

head gas for the purpose of operating gas engines to run suction pumps to increase the flow of the oil from the wells then in operation upon the premises; and that it was upon the strength of this assurance that he advised his clients to sign, and they did sign the agreement. This is offered for the purpose of showing that it was understood that the use that was contemplated by the parties was the use mentioned in the offer, and that the intention to use it for the extraction of gasoline and the establishment of a plant for the purpose of extracting gasoline was not mentioned when the subject was up for discussion." The offer was objected to on the ground that the agreement is in writing; and for the further reason that there is no allegation in the bill that there was anything left out of the agreement by fraud, accident or mistake. The objection was sustained and the offer was rejected. It is quite enough to say that the objection should not have prevailed; the evidence does not contradict or alter in any way the written contract, and its purpose was entirely legitimate under the rule we have above stated, as tending to show that defendants' understanding of the purpose of the agreement was not what they now insist upon. The ruling of the court respecting the offer is made the subject of the sixteenth assignment of error. This assignment is sustained.

Several witnesses called on behalf of the defendants were permitted to testify on the ground that they were experienced and familiar with the methods of production of head gas and the manufacture of gasoline therefrom. Some of these were allowed, under objection, to express their opinion as to what would be included under such grant as is the subject of contention here; others were permitted to testify to a prevailing custom to regard such lease as embracing and including the rights which are here contended for on the part of the defendants. The opinions expressed by these witnesses, however well informed the witnesses might be with respect to the correct method of operating plants such as the

defendants' and what is necessary in connection there-
with, would hardly relieve the trial court of the duty
and responsibility of forming its own opinion as to what
was meant by the use of the words "together with all the
rights necessary to use and enjoyment of the same," in a
contract where the specific thing defined was the head
gas from existing oil wells; nor could they be helpful in
any degree in enlightening the court with respect to the
facts from which its own conclusion was to be reached.
The general rule is well settled that the province of a
witness is to state facts, and that of the jury is to draw
conclusions from them. Where the court sits as the
jury the rule must be the same. The objection to this
evidence should have been sustained. And so too the ob-
jection to the testimony introduced to show a particular
custom by which this contract was to be construed. It
is evident that there could have been no custom existing
at the time when this contract was made affecting it
in the slightest degree with respect to the question here
involved. The manufacture of gasoline from head gas
had then just been entered upon. "Before a mere usage
of trade or a custom can become so firmly imbedded in
the law as to govern the rights of parties, it must be so
certain, uniform and notorious as probably to be known
to and understood by the parties entering into the con-
tract." Ambler v. Phillips, 132 Pa. 167. The admission
of this evidence is also made the subject of several as-
signments of error. These assignments are sustained.

Evidence was introduced by plaintiffs to show that de-
fendants were employing the plant they were operating
to extract gasoline from oil piped there from property
adjoining plaintiffs and belonging to another. The
chancellor held that the point here suggested was irrele-
vant because not raised by the pleading. To this we
cannot agree. Under the pleading the plaintiffs were
entitled to show how and in what manner the plant was
being used. It would be for the court to say whether
using it in the way attempted to be shown by this wit-

ness, was necessary to the use and enjoyment that the defendants were entitled to under the contract. The several assignments of error in which the matters we have discussed are complained of are sustained. The decree of the court is reversed and the record is remitted for further proceedings in accordance with this opinion.