In re: Estate of I. L. Crist.

Argued April 11, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Albert L. Thomas,* of *Thomas and Kiebort,* for appellant.

*Carlton M. Randall,* and with him *Clarence T. Bryan,* and *Elmer L. Evans,* for appellees.

OPINION BY STADTFELD, J., October 10, 1932:

This is an appeal by Etta Riderman, executrix of the last will and testament of I. L. Crist, late of Erie County, deceased, from an order of the orphans' court of said county, sustaining certain exceptions to her account, directing her to restate her account, and to include therein, inter alia, as assets of the estate, the moneys in a certain account in the First National Bank of Albion, Pennsylvania, which had been included in the inventory of the personal estate of decedent. The accountant claimed credit for the amount of this account, $2,315.26, as having been improperly included in the appraisal of decedent's assets.

I. L. Crist, the decedent, died testate on January 25, 1930, leaving to survive him a widow, Allie Crist, and a sister, Etta Riderman, a resident of Los Angeles, California. By the terms of his will, dated November 17, 1924, and duly probated on April 17, 1930, one dollar is bequeathed to his wife, Allie Crist, and all the rest of his property to his sister, Etta Riderman, named as executrix in the will, to whom letters were issued April 17, 1930. An inventory of the personal property was filed on May 8, 1930, giving the value of the personal estate at $2,651.50 which included the account in the First National Bank of Albion, Pennsylvania, amounting to $2,315.26.

On August 12, 1930, the executrix filed an account, claiming credit for the amount of the bank account as having been improperly included in the appraisement.

Exceptions were filed by the widow and a creditor of the estate to the credit, inter alia, of $2,315.26, claimed by accountant, and described in the account as "account in First National Bank of Albion, improperly included in the appraisement."

Testimony was taken, and the exceptions argued before CLARK, J., whose term of office expired before a

decision was rendered. A re-argument was had before WAITE, J., who, in an opinion filed, sustained the exceptions to the allowance of this credit on behalf of the accountant, and directed the accountant to restate her account. From that order this appeal is taken.

It appears from the testimony that the decedent maintained an account in the First National Bank of Albion, Pennsylvania, which was opened May 23, 1924. The passbook was in the possession of the decedent during his lifetime, and was found among his effects at the time of his death, showing a balance in the account of $2,315.26. Sometime previous to the decedent's death the account had been changed, and at the time of his death, read as follows:

Outside of passbook: "I. L. Crist, Albion, Pa., or Mrs. Etta Riderman, 4259 Southwestern Ave., A. V., Los Angeles, Calif."

On the inside: "I. L. Crist, or Mrs. Etta Riderman, joint account payable to either or the survivor."

On the bank ledger: "I. L. Crist, Albion, Pa., or Mrs. Etta Riderman, Los Angeles, Calif., Bronson Ave."

The name of I. L. Crist appeared alone on the signature card of the bank, and no other notation.

These changes, it was admitted at the hearing, and so stipulated on the record, were made at the instance of I. L. Crist, the decedent.

There is no evidence that this passbook was ever in the possession of the claimant, or that she had any knowledge of it, nor that she was ever in the bank prior to the decedent's death. The account was apparently opened by the decedent and all deposits and withdrawals up to the time of his death, were made by him.

The sole question to be decided is whether the action of the decedent, in directing the changes referred to, had the effect of vesting, at the time of his death, the balance to the credit of said account in Etta Rider-

man, the appellant, or did it constitute a part of his estate.

The solution of this question depends on the effect of the changes in the form of the account with the bank made at the instance of the decedent. The money in dispute was the property of I. L. Crist. The claimant had no ownership or interest of any kind in it.

The only theory on which this account, or any interest therein, could have passed to claimant was by means of a gift inter vivos which would be an intent to give followed by actual delivery, or what was equivalent thereto, to the donee of the gift.

In the leading case of Flanagan v. Nash, 185 Pa. 41, it was held that when a person deposits his own money in the joint name of himself and another under a stipulation in the deposit book that either may draw the fund, or the survivor may draw it, the other person, after the death of the owner of the fund cannot, in the absence of any other evidence, establish title to the fund, either as a gift inter vivos, or as a donatio causa mortis.

In that case, the claimant was with the owner of the fund when he deposited the money in the joint names of herself and the claimant. On the margin opposite the signatures, the words, "either to draw" were entered by the treasurer of the association in which the deposit was made. A book was also handed her which had the words stamped upon it, "Either party to draw, and in case of death of either of them, the survivor shall have full power to withdraw the deposit as if the same had been duly transferred to such survivor."

Quoting from the opinion of the court in that case by Mr. Justice GREEN (44):

"The difficulty in the way of the defendant's contention in this regard is, that the decedent never parted with her title in her lifetime, and hence there was no delivery of the subject of the alleged gift. She had the

right to draw out the whole of the money up to the moment of her death, and for that reason she still held her title to the money. It never passed away from her while she lived, and therefore, there was no delivery. There is no difference in this respect between gifts inter vivos and gifts causa mortis. Actual delivery of the subject of the gift is just as necessary in the one case as in the other. The only material difference between the two is that there is a right of reclamation in the latter which does not exist in the former. This whole subject has been so fully illustrated by our Brother WILLIAMS, in the case of Walsh's Appeal, 122 Pa. 177, that any further reference to authorities is unnecessary. He there said, 'A gift is more than a purpose to give, however clear and well settled the purpose may be. It is a purpose executed. It may be defined as the voluntary transfer of a chattel, completed by the delivery of possession. It is the fact of delivery that converts the unexecuted and revocable purpose into an executed and irrevocable contract. All gifts are necessarily inter vivos, for a living donor and donee are indispensable to a valid donation; but when the gift is prompted by the belief of the donor that his death is impending, and is made as a provision for the donee, if death ensues, it is distinguished from the ordinary gift inter vivos, and called donatio mortis causa. But by whatever names called the elements necessary to a complete gift are not changed. There must be a purpose to give; this purpose must be expressed in words or signs; and it must be executed by the actual delivery of the thing given to the donee or some one for his use. In every valid gift a present title must vest in the donee, irrevocable in the ordinary case of a gift inter vivos, revocable only upon the recovery of the donor in gifts mortis causa.'

"These words and many more to a similar effect contained in the opinion, are absolutely destructive of

any claim of title by way of gift, on the part of the defendant. Moreover, the statement in the bank books that either might draw, or the survivor might draw, does not at all establish a title as owner in the defendant. It is a mere right to draw the money that is conferred. There is nothing to show that if the defendant drew the money he could keep it as his own and without such words no title by way of gift could pass."

In the instant case, claimant never had any knowledge of the account in the bank, nor was she ever in the bank prior to decedent's death. The bankbook was always in the possession of the decedent, subject at all times to his control. He alone deposited the money, and drew checks against it. He never delivered possession to claimant, either constructively or otherwise, never informed her of the account, and it therefore cannot be held that he ever intended it to take effect in his lifetime, or that it was operative as a gift in presenti and inter vivos.

If any intention is to be inferred from decedent's actions, it is rather that he was attempting to keep his bank account within his control until his death, yet not allow it to pass under the terms of his will so that his wife might be in position to take against the will.

Appellant relies on the case of Reap, Exr. v. Wyoming Valley Trust Company, 300 Pa. 156.

In that case, Mary Gilligan had a bank account, and lodged the following writing with the bank:

"Please add Miss Catherine Reap's name on my deposit book No. 12782 and make the account to read:

Money payable to either or the survivor of them."

This paper was signed by Mary Gilligan and duly witnessed.

At page 158, the court in a per curiam, said:

" 'Where manual delivery is not practicable, a transfer may be made by assignment or by other writing ......which will indicate a present intention to pass

right of possession to the donee,' and that the writing in the case was sufficient to that end, because, whether the transaction was viewed as a gift or otherwise, 'the language used in the memorandum accompanying the deposit expresses with sufficient clarity the intention to create a joint tenancy with the right of survivorship.' ''

In Grady v. Sheehan, 256 Pa. 377, the following writing was lodged with the bank:

"Philadelphia, Pa., Feb. 23, 1912.

"I, Thomas F. Grady, having this day opened a Deposit Account with the Beneficial Saving Fund Society of Philadelphia, in the names jointly of myself and sister, Mary Sheehan, under the following conditions:

"Either party to draw, and in case of death of either of them, the survivor shall have full power to withdraw the deposit as if the same had been duly transferred to such survivor—which conditions are imprinted upon my Deposit Book No. 66986. I hereby further declare that my intention in so doing is, that, in the event of my death, the said Mary Sheehan shall have full power to unconditionally withdraw the balance of said deposit and to absolutely possess and retain it for her own use and benefit. Provided, however, that so much of it as may be necessary for the purpose shall be applied to the payment of my lawful debts and the expenses incidental to my last illness and burial.

"Nothing herein declared, however, shall be construed as binding the Beneficial Saving Fund Society, in any way, to the carrying out of the foregoing proviso; my confidence in the integrity of the said Mary Sheehan being such as to entrust the matter entirely to her for execution.

Thomas F. Grady    (Seal).''

Witnesses:

(Signed)    James J. Murphy,
            C. F. Hughes.

In that case both parties appeared at the bank and signed the signature card and the book was given to the survivor.

While the lower court held the paper testamentary, and the judgment was affirmed on the opinion of FIN-LETTER, J., the language of the latter on the question involved in the instant case is most pertinent:

"......that the right of either to draw, standing alone, and in the absence of any act or declaration of intention on the part of the donor that the account was put in that form for any other purpose than his own convenience would vest no title to the deposit in the defendant. ......

"It may be conceded that the full control which one has over his personal property includes the right to create such a joint ownership and survivorship either for a consideration or by gift. But if created by way of gift, it is subject to the rules governing gifts, among which is that requiring delivery. Being a chose in action and incapable of manual delivery, delivery can only be made by means of written assignment. This, it has been held, must be an assignment in praesenti. The assignment by gift, even of a promisory note, has been held to be executory and ineffective, and the assignment of a certificate of stock evidenced only by the delivery of the certificate without more, is equally ineffective as a gift: Sullivan v. Hess, 241 Pa. 407.

"The delivery of the deposit book to the defendant without more could hardly be said to have the force of an assignment."

To the same effect see Tearpoak v. Tearpoak, 85 Pa. Superior Ct. 470.

In Mardis v. Steen, 293 Pa. 13, also relied upon by appellant, the following agreement was signed and lodged with the bank:

"It is agreed and understood that any and all sums that may from time to time stand on this account, to

the credit of the undersigned depositors, shall be taken and deemed to belong to them as joint tenants and not as tenants in common; and in case of the death of either, the First National Bank is hereby authorized and directed to deal with the survivor as sole and absolute owner thereof.

"Witness our hands and seals this 30th day of May, 1924.

Attest:

F. FLOYD ASKIN      B. F. MORGAN            (Seal)

F. FLOYD ASKIN      FLORENCE M. STEEN    (Seal)."

Upon this fact the Court decided the case, and said, quoting from the opinion by Mr. Justice FRAZER:

"Where manual delivery is not practicable a transfer may be made by assignment or by other writing or token which will indicate a present intention to pass right of possession to the donee. Whether there was sufficient proof of a transfer of possession in this case so as to vest title in defendant as survivor must depend upon the construction of the writing on the signature card accompanying the bank deposit.

"Since the Act of March 31, 1812, 5 Sm. L. 395, the mere fact that a joint ownership of property is created does not, as matter of law, give the survivor the entire ownership in the property; but it has been held that this legislation limited only the legal presumption which formerly followed, and placed no restriction on the freedom of the parties to provide by agreement or otherwise that the right of succession, which existed previous to the act, should apply. In other words, survivorship, as an incident of an estate held by joint tenants, is still lawful and the question is now one of intent, and no particular words are necessary except that the intent be expressed with sufficient clearness to overcome the presumption arising from the statute."

In the instant case there is no evidence of an agreement, either oral or in writing, or anything other than

the mere fact of change in the deposit as hereinbefore set forth.

In Bailey's Estate, 86 Pa. Superior Ct. 322, where a brother and sister deposited money to the joint accounts of both, there was ample evidence of declarations of the deceased brother, that it was the intention that the money should be held in a joint account with the right of survivorship, and the Court awarded the money to the surviving sister on the death of the brother.

In the case at bar, there are lacking the necessary elements from which an intention to make a gift inter vivos can be inferred. The fact that claimant at no time during decedent's lifetime had any knowledge of the account, the fact that she included the account in the inventory of the estate, which is contrary to any implied acceptance on her part, are elements strongly opposed to any conclusion tending to show an executed gift to her.

We do not understand Reap v. Wyoming Valley Trust Company and the other cases cited by appellant as controlling the case at bar, nor as overruling the principles laid down in the well considered cases hereinbefore cited.

A motion to quash this appeal was made on the ground that the order of the orphans' court is only interlocutory. We do not think that the objection is well taken. This appeal involves not any question between distributees, but rather the right to have the account brought into distribution. It is a right asserted as against the estate, and not through or under the estate. We believe that it is a final decree so far as appellant is concerned. The motion to quash is therefore overruled.

The assignments of error are overruled, and the decree of the court below is affirmed. Costs to be paid by appellant.