Mader et al. v. Stemler et al., Appellants.

Argued May 28, 1935. Before SIMPSON, KEPHART, SCHAFFER, DREW and LINN, JJ.

*Donald K. Royal,* with him *John A. F. Hall,* for appellants.

*David M. Wallace,* with him *Robert T. Fox,* of *Caldwell, Fox & Stoner,* for appellees.

Opinion by Mr. Justice Linn, June 29, 1935:

These cases (appeal No. 9 by Jean L. Stemler, and No. 10 by Hettye Stemler) were tried together in the court below and were argued together here.

Frank Stemler died April 19, 1932. His will was proved and letters were issued to John F. Dapp, executor. By the will, dated March 24, 1925, testator gave all his property to his wife for life, with power to consume, with remainder to their children and the issue of deceased children per stirpes. His wife predeceased him. Eight children survived. At the time of his death his immediate household consisted of himself and his two daughters, the appellants, who kept house for him—one of them employed in a department store and the other as a public school teacher—and his eldest son, John, one of the plaintiffs, who was out of work. Excluding the two joint bank accounts involved in these appeals, he left real and personal estate amounting to about $8,000; his debts were a few personal bills for current expenses.

In the Camp Curtin Trust Company there was a savings account of $5,639 which is the subject of appeal No. 9. On December 7, 1926, when the credit was $861, the account was changed from Frank Stemler to "Frank Stemler or Jean Stemler" on the books of the company. Stamped on the signature card and signed by both depositors was the following: "The sums deposited in this account belong to Frank Stemler and Jean Stemler jointly, it being understood each may withdraw upon his or her or their individual order during joint lives, and we hereby direct and authorize the Camp Curtin Trust Company, Harrisburg, Pa., to pay any balance remaining upon the death of either of us to the survivor." All the deposits were made by the decedent. After Stemler's death, the account was withdrawn by Jean Stemler. Decedent, when he died, also had a checking account in his own name in this bank, with a credit of $129.31.

In the Central Trust Company there was a savings account of $4,611, which is the subject of appeal No. 10.

On June 4, 1927, when this account was $1,551, it was changed from F. H. Stemler to "F. H. or Hettye Stemler" on the ledger sheet and was apparently so entered on a later passbook. There was no signature card (or other written agreement) bearing Hettye Stemler's signature and the deposit still remains. All deposits were apparently made by decedent.

Decedent's other six children claim the right to share in the two deposits with appellants. Accordingly, they filed two bills in equity based on the same legal theory, and containing substantially the same allegations. The form of procedure was not challenged. With themselves as plaintiffs, they joined the executor, and, in No. 10, the Central Trust Company. The bills charged that decedent created the savings accounts, in each case, "for the purpose of having his said daughter, the defendant, upon his death distribute the same share and share alike among all his children," and prayed for a decree "that the said . . . [daughter] . . . is a Trustee of the said fund for the use and benefit of all the children of the said Frank Stemler, share and share alike," and that she be ordered to "account to all the children of the said Frank Stemler for the said fund." The learned court below concluded that "a gift inter vivos in either case has not been established," and held that the accounts were the property of the decedent at the time of his death. A decree was entered requiring the defendant, Jean Stemler, to pay to the executor the amount withdrawn by her with interest, and, in the other case, that the trust company pay the account to the executor.

No. 10, appeal of Hettye Stemler. There is no finding, and no evidence to support one, that decedent and appellant ever signed a contract like that appearing in No. 9. All we have is that the account, on the books of the trust company, was in the name of F. H. or Hettye Stemler. The testimony, even considering what was received subject to objection and subsequently rejected as incompetent under the Evidence Act, May 23, 1887, P. L.

158, section 5, is insufficient to support a finding that Stemler assigned an interest in the account with the right of survivorship. Cf. Strause's Est., 75 Pa. Superior Ct. 276; Bailey's Est., 86 Pa. Superior Ct. 322. There is no evidence that would support a gift executed "by assignment or by other writing which . . . would indicate a present intention to pass right of possession to the donee" (Mardis v. Steen, 293 Pa. 13, 15, 141 A. 629), manual delivery being impracticable. The conclusion reached below in the suit against Hettye Stemler is supported by Flanagan v. Nash, 185 Pa. 41, 39 A. 818; Zellner's Est., 316 Pa. 202, 172 A. 715; Crist's Est., 106 Pa. Superior Ct. 571, 162 A. 478; Gallagher's Est., 109 Pa. Superior Ct. 304, 167 A. 476, and must be affirmed.

No. 9, appeal of Jean Stemler, raises a different question; it is: What was the effect of the agreement prepared by the bank and signed by both parties on December 7, 1926, in the circumstances shown? It may again be repeated: "The sums deposited in this account belong to Frank Stemler and Jean Stemler jointly, it being understood each may withdraw upon his or her or their individual order during joint lives, and we hereby direct and authorize the Camp Curtin Trust Company, Harrisburg, Pa., to pay any balance remaining upon the death of either of us, to the survivor." Certain results were undoubted. The bank agreed to repay the deposit to either on demand. Its obligation was a chose in action. As between him and his daughter, Stemler transferred to her an interest in the chose—an interest in the right to receive payment from the bank; he expressed his donative purpose; as part of the evidence of intention, he executed and delivered the agreement creating a joint interest with the right of survivorship. They agreed that "the sums deposited . . . belong to . . . [them] . . . jointly"; they provided that either might withdraw the money during their joint lives, and the survivor, on the death of either. An interest as joint owner was transferred, as appears from the statement that "the sums

. . . belong to . . . [them] . . . jointly"; it was not merely a power to collect (as to which, see Flanagan v. Nash, supra; Zellner's Est., supra). When, therefore, after Stemler's death, the bank paid the money to Jean Stemler, it discharged its obligation by paying to the survivor in accordance with the contract made by the bank and the depositors. On the main question, the learned chancellor thought the case was similar in fact to Flanagan v. Nash, supra, and Grady v. Sheehan, 256 Pa. 377, 100 A. 950, in which it was held that the evidence was insufficient to establish title to the fund as a gift inter vivos. In neither of those cases was there, as in appeal No. 9, a writing signed by the parties, completely expressing the intention to vest by assignment a present joint interest in the chose in action with the right of survivorship. This distinction was noted in Mardis v. Steen, supra; Crist's Est., supra, 580; Gallagher's Est., supra, 311.

It is conceivable that, while invested with a joint interest in the bank's obligation, the appellant, by some other contract with Stemler for the benefit of all the children may have received the money for their benefit. Plaintiffs seem to have proceeded on that theory. But the evidence is insufficient to support such a contract. The measure of proof required to show a trust of that character must be "clear, precise and unequivocal": Washington's Est., 220 Pa. 204, 205, 59 A. 747; Hollis v. Hollis, 254 Pa. 90, 98 A. 789. In this case the evidence does not meet that measure. The decree in No. 9 cannot be sustained.

No. 9. Decree reversed, costs to be paid by appellees.

No. 10. Decree affirmed, costs to be paid out of the fund on deposit in Central Trust Company.