Watkins, Exr., *v.* MacPherson, Appellant.

468

Argued November 26, 1943. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Harry Alan Sherman,* for appellant.

*Alan D. Riester,* with him *Warren O. MacLean,* for appellee.

OPINION BY MR. JUSTICE DREW, January 3, 1944:

Margaret Conant died on April 3, 1940, testate, and letters testamentary were duly granted plaintiff. He brought this suit in assumpsit against defendant, Wilma MacPherson, a niece of decedent, alleging that in February and March, 1940, she obtained possession of $1200 in cash and thirty shares of a building and loan company stock, of a value of $2,693.80, the property of Mrs. Conant, all of which she now refuses to return. Defendant admitted the receipt of the money and the stock, and alleged that they had been given to her as gifts by her aunt and were not to be returned to her or her estate.

The case was tried below, non-jury, and the learned court found, in findings of fact and conclusions of law, that "Defendant stood in a confidential relationship to decedent", that "The burden of proving a gift of the property in dispute was on the defendant" and that she failed to meet it "under the factual circumstances". Judgment was entered for plaintiff for the full amount of the claim and interest, $4,396.57. A careful examination of the record has convinced us that it is impossible to support this judgment.

Plaintiff offered no testimony, but rested on the allegation in the affidavit of defense that the property was a gift and a ruling of the court that the burden was on defendant to prove it. Defendant accepted this ruling, and although she could not testify to what happened between decedent and herself, particularly as to the alleged transfer of ownership, she showed by uncontradicted testimony the following facts:

Mrs. Conant was probably seventy years of age at the time of her death. She had been in the Mercy Hospital for about two months immediately prior to that time. Her husband had died years before. She was childless, but had other relatives, children of a deceased brother and sisters. She made her will on September 15, 1939, and treated these relatives equally. The learned court found as a fact that "Defendant was the only relative who manifested an interest in decedent during her later life and had been called on and had taken care of decedent 'when anything happened', as a witness put it." This witness, Mrs. O'Leary, testified that she was a friend of Mrs. Conant for thirty-five years, that she lived next door to her for many years, that defendant visited her aunt frequently and saw her almost every day when she was in the hospital; she said that decedent told her that defendant was the only one that took care of her and that she intended to see that she was "taken care of". It was admitted of record that if another witness, Harry Haffner, an old friend of Mrs. Conant, was called "he would testify that Mrs. Conant in her life time told Mr. Haffner she intended to give the money and stock to Wilma MacPherson."

The testimony of the Secretary of the Building & Loan Association regarding the transfer of the stock is of particular importance, since it shows the deliberation and care with which the transfer to defendant was made, and how absolute it was. He identified Exhibit A, the pass book of "the stock of Mrs. Wilma MacPherson", and said that he had prepared and attached the first page

which read as follows, "For value received, the under-signed does hereby sell, assign, transfer and set over unto Mrs. Wilma MacPherson, her executors and administrators or assigns, thirty shares of stock of the Confidence Building & Loan Association of Pittsburgh, S.S., standing in my name, together with all moneys secured thereby and do hereby authorize and empower the officers of the said Association to transfer the same. Witness my hand and seal this 2nd day of March, 1940. Attest, Margaret Conant, her mark. Witnesses, Mary S. Durgan, 1829 Fifth Avenue, Leslie C. MacPherson, Jr., 2000 Broadway." Other testimony showed that she signed by "mark" because her right hand had been injured in an accident. The Secretary never saw Mrs. Conant, Exhibit A having been executed outside his office. Mr. MacPherson identified his signature but was prevented from testifying further by objection of plaintiff.

It seems to us that this testimony, not one word of which was contradicted, shows beyond peradventure that Mrs. Conant several months before her death, in four separate transactions, deliberately and completely divested herself of title to this money and stock, and vested the same absolutely in her favorite niece, and that this was a natural thing for her to do because of their relationship, the fact she had no nearer relatives, and because of the affection and devotion shown her. It is admitted there was no fraud, undue influence, or lack of mentality. The witnesses were disinterested. If they are believed, their testimony is conclusive in favor of defendant. The fact the $1200 was taken out of the bank in three separate transactions, on different dates, and the preparation and execution of Exhibit A for the transfer of the stock, on still another date, show that what decedent did for her niece was not a hasty, sudden impulse, but the premeditated deliberate action of a woman who knew her own mind and how to dispose of her property.

We think there can be no reasonable doubt that defendant carried the burden, which the law and the lower

court put upon her, of proving the gifts, and that reference to a few decisions of this Court will clearly show she is entitled to judgment.

We said in *Gongaware's Est.*, 265 Pa. 512, 515-6, 109 A. 276: ". . . the burden of proving a gift . . . is upon those who allege it." See also *Henes v. McGovern*, 317 Pa. 302, 176 A. 503. In *Yeager's Est.*, 273 Pa. 359, 362, 117 A. 67, this Court stated: "The quality and quantity of proof required to meet this obligation varies greatly, depending upon the circumstances of the particular case. Where the parties are strangers, the presumption against voluntary transfers is greater than in transactions between those holding more intimate relations. If the gift is from husband to wife (*Crosetti's Est.*, 211 Pa. 490), or parent to child (*Langdon v. Allen*, 1 W.N.C. 395), the action of the donor is viewed as but natural, and less evidence is required to establish the intention. Though the mere possession of personal property, shown to have formerly belonged to another, is not in itself sufficient to raise a presumption that title was transferred, yet if it appears there was a voluntary delivery without explanatory words, and a retention of possession by the transferee, so related, it can be assumed that there was an intention to give: 20 Cyc. 1220." See *Ries v. Ries's Estate*, 322 Pa. 211, 185 A. 288.

We said in *Brown's Estate*, 343 Pa. 230, 240, 22 A. 2d 821: "To make a valid gift there must have been not only an intention to make it but to do so at the time and not in the future, and it must be accompanied by an actual or constructive delivery to the donee by which the donor released all dominion over the property and invested the donee with full title to and control over the same. Without a complete delivery there can be no valid gift inter vivos, though every step be taken that is essential to the validity of the gift; if there is no delivery the gift must fail. Intention cannot supply it; words cannot supply it; actions cannot supply it; it is an indispensable requisite without which the gift fails, regardless of conse-

quences, and the test of delivery is the change of property, the immediate right to the entire dominion over the subject of the gift, a perfect title which is as good against the donor as anyone else." *Hafer v. McKelvey*, 23 Pa. Superior Ct. 202.

It follows, whether or not a confidential relationship existed between decedent and her niece, defendant has qualified on all grounds to keep the gifts her aunt freely and with design gave her.

Judgment reversed and here entered for defendant.