## Fell Estate.

Argued January 7, 1952. Before DREW, C. J., STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

*S. Maxwell Flitter*, with him *Everett Kent*, for appellant.

*Francis H. S. Ede*, with him *Edmund P. Turtzo*, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 24, 1952:

On June 26, 1943, Joseph Fell opened a savings account in the First National Bank of Pen Argyl, Pennsylvania, with a deposit of $1250.00. On June 9, 1944, while depositing an additional $720, he had title in the passbook changed to the names of "Joseph Fell or Mary E. Sullivan." He obtained at the same time from the bank teller a so-called signature card which recited: "We, the undersigned, hereby declare that we are joint owners of the money deposited in the account which we have opened in our names in the First National Bank of Pen Argyl, Pa., in savings account No. 6608, and in consideration of said mutual deposit we do further declare that said funds, together with any additional deposits of money made by either of us in said account, as well as any interest accruing thereon, shall be, and are our joint property to be held

for us as joint owners with the right of survivorship. . . " Both Joseph Fell and Mary E. Sullivan signed this card and it was returned to the bank.

On December 21, 1944, Joseph Fell died intestate. Mary E. Sullivan sought possession of the bank book from the administrator William H. Dunbar who had obtained it by virtue of his authority as administrator. When Dunbar refused to surrender the book, Miss Sullivan instituted an action of replevin in the Court of Common Pleas and a hearing on the contested issue ensued. The notes of testimony, by agreement of counsel, were certified to the Orphans' Court which decided that Mary E. Sullivan had legal title to the passbook and the funds in the bank account as surviving joint tenant under the contract of deposit executed by Fell and Sullivan. From that decision the administrator appealed to this Court.

The administrator-appellant contends that the double fact that the money in the bank was deposited by Fell alone and that the passbook was found in Fell's safety deposit box defeats any claim by Miss Sullivan that she is entitled to the book and the funds as survivor of a joint tenancy. In this contention the administrator is right, so far as it goes. *Romig v. Denkel et al. v. Exr.*, 326 Pa. 419, 192 A. 657. But this contention ignores the most important feature of the case, namely, the contract by Joseph Fell and Mary E. Sullivan. And the burden in a situation of this kind is upon the administrator to show, by evidence, which is clear, precise and indubitable, that the contract is not what it plainly says it is. *Montgomery v. Keystone Savings & Loan Assoc.*, 150 Pa. Superior Court 577, 29 A. 2d 203.

On the other hand, a burden rested upon the claimant to demonstrate that she was the beneficiary of a legitimate gift inter vivos. And the proof of that gift

must be clear and satisfactory. *Smith's Estate,* 237 Pa. 115, 85 A. 76. But she met that burden successfully by proof of the signature card signed by her and her joint tenant.

It was argued by the appellant that the gift could not have been completed since the passbook was never physically given to the donee, but this overlooks the fact that the gift, while complete in what it conveyed, still withheld something for the donor. Since donor and donee were both owners of the passbook it is obvious that one or the other, at some time, would be minus the passbook. They could not hold it simultaneously between them.

Where the depositor and some one else execute an agreement that the bank account shall belong to both of them as joint tenants, subject to the check of either of them, and in the case of death of one, the bank shall deal with the survivor as sole and absolute owner, the agreement is prima facie evidence of a gift inter vivos by the depositor to the other and of the creation of a joint tenancy with the right of survivorship. *Lochinger v. Hanlon,* 348 Pa. 29, 33 A. 2d 1; *Glessner v. Security-Peoples Trust Co.,* 166 Pa. Superior Ct. 566, 72 A. 2d 817; *Culhane's Estate,* 133 Pa. Superior Ct. 339, 2 A. 2d 567.

The appellant has argued that the signature card is a nullity because there was no evidence that the decedent knew the card contained a provision for the creation of a joint tenancy with the right of survivorship. He contends also that since the decedent had merely asked that Mary E. Sullivan's name be added to his passbook, the bank teller committed a deception in giving the decedent a signature card providing for the joint tenancy with right of survivorship. Also the appellant maintains that the retention by Fell of the passbook was due to an understanding that Miss Sul-

livan was not to use any of the funds during her life-
time; and finally he says that the decedent executed
the signature card under mistake. But these are all
suppositions sprouting from the tree of advocacy which,
without the sustenance of facts to support them, can
only wither on the bare limbs of argumentation.

There was no evidence that the signature card was
not what it purported to be, no evidence that the dece-
dent was not fully aware of what he was doing, no
evidence that he was not entirely sane and normal, no
evidence that the teller did any more or less than was
required of him in the execution of his duties at the
bank. The whole transaction presents the simplest and
clearest picture of a man openly and voluntarily mak-
ing a gift to a friend for whatever reason pleased him.
It cannot be disputed that Miss Sullivan could have
withdrawn funds from the bank during Joseph Fell's
lifetime. Why should her rights have been less when
he died? His death only solemnized the gift, and the
law will not penalize her because she declined to with-
draw any money during the time that it could still
have been of service to her benefactor.

The only points left to consider are the printed
joint tenancy contract in the bankbook which was not
signed, and the jurisdiction of the Orphans' Court over
this litigation. As to the former, it is clear that this
formality was one only for the protection of the bank,
the signature card being sufficient to establish the con-
tract of joint ownership. As to the latter, the contro-
versy was within the jurisdiction of the Orphans' Court
as it concerned the ownership of personal property
which was in the decedent's possession, either actually
or presumptively, at the time of his death, and since
the evidence failed to disclose a substantial dispute,
the hearing judge properly exercised his discretion
in refusing to certify the issue to the Court of Common

Pleas for an advisory verdict: *Tomkovic Estate,* 362 Pa. 487, 84 A. 2d 191; *Franz Will,* 368 Pa. 618, 84 A. 2d 292; *Keyser's Estate,* 329 Pa. 514, 198 A. 125.

The fact that all the moneys were contributed to the account by the decedent does not negative an intent to make a gift. Where one contributes the entire sum to a joint account the rights of each joint tenant are the same. *Mader et al. v. Stemler et al.,* 319 Pa. 374, 179 A. 719; *Glessner v. Security-Peoples Trust Co.,* 166 Pa. Superior Ct. 566, 72 A. 2d 817.

The court below therefore correctly held that legal title to the passbook and the funds in the bank account here involved belonged to Mary E. Sullivan as surviving joint tenant. Where there are two joint tenants of a bank account, what one tenant acquires on the death of the other is the right to immediate possession, ownership and enjoyment of the entire fund: *Cochrane's Estate,* 342 Pa. 108, 20 A. 2d 305.

Decree affirmed. Costs to be paid by appellant.