## Balfour, Appellant, *v.* Seitz.

Argued March 20, 1958. Before Jones, C. J., Bell, Chidsey, Musmanno, Arnold, Jones and Cohen, JJ.

*James E. Marshall,* with him *Marshall, Marshall & McNamee,* for appellant.

*Leonard I. Feldstein,* with him *Michael M. Mamula,* for appellee.

Opinion by Mr. Justice Benjamin R. Jones, April 21, 1958:

This appeal presents an oft litigated issue: Whether under the circumstances a gift inter vivos of a bank account has been established.

John L. Balfour, a resident of Butler County, died intestate, August 12, 1955.

Sometime prior to 1930 decedent opened in his own name a savings account in the Mars National Bank of Mars, Pa. Approximately twenty to twenty-two years later—between October 1950 and September 26, 1952—the name of Letitia Seitz, one of decedent's nine children, was added to this account which was then styled "John L. Balfour or[1] Letitia Seitz."[2] Neither a signature card, withdrawal agreement, nor a survival agreement was ever signed by the parties. The bank did not require *any* written agreement in connection with its savings accounts.

In 1953 six withdrawals, totalling $325, were made from this account—all by decedent alone. Only one deposit—$500 in 1954—was made in the account; the identity of the person making this deposit was not established. For approximately ten years prior to his death Balfour had lived with one of his sons and there is no evidence that he had ever lived with Letitia Seitz or that she had performed any unusual or particular services for him. Subsequent to decedent's death the passbook for the account was found among his papers, the account then having a balance of $1918.46.

Balfour's administrator, claiming the money belonged to the estate, petitioned the Orphans' Court of Butler County for a declaratory judgment. Letitia Seitz, although she did not so aver in her answer to the petition for declaratory judgment, claimed the account as gift inter vivos to her on the basis of an *alleged, but unproved,* oral agreement between herself and decedent.

After a hearing, the Court below concluded as a matter of law that decedent had created a joint tenancy with the right of survivorship in the savings account,

---

[1] Emphasis supplied.

[2] No words of survivorship appear either on the passbook or on the bank records.

that he had made a gift inter vivos of the account to Letitia Seitz and that upon decedent's death the funds represented by the account belonged to Letitia Seitz. From the decree dismissing the petition for a declaratory judgment this appeal was taken.

The factual record in the Court below was: (1) approximately three to five years prior to decedent's death a savings account in the name of "John L. Balfour" was changed to read "John L. Balfour or Letitia Seitz"; (2) according to a former bank teller Letitia Seitz's name was added to the account at the instruction of and in the presence of both decedent and Letitia Seitz; (3) at that time the teller explained to both parties that after either party died the account would belong to the survivor; (4) neither decedent nor Letitia Seitz made any recalled response to the teller's explanation; (5) no evidence was produced that Letitia Seitz ever deposited any of her own money in the account; (6) all the withdrawals from the account were made by decedent alone; (7) the bank book was in decedent's possession at the time of his death; (8) under the bank's regulations (set forth in the passbook) no money could be deposited in or withdrawn from the account without the presentation of the passbook.

In *Martella Estate*, 390 Pa. 255, 258, 135 A. 2d 372, Mr. Justice BELL, speaking for this Court, recently said: "Cases involving joint bank accounts, joint savings accounts . . . have proved vexing. Certain pertinent principles of law are now well settled by recent decisions of this Court, although their application to the different factual situations which so frequently arise is often difficult."

These well established principles of law, as pertinent herein, are: (1) the mere fact that money is deposited to the account of the owner "and" another or the owner "or" another does not, standing alone, prove

a gift inter vivos;[3] (2) the burden is on the claimant to establish a gift inter vivos[4] " by clear and convincing evidence";[5] (3) to constitute a gift inter vivos there must be shown "such an actual or constructive delivery to the donee (a) as to divest the donor of all dominion and control, or (b) if a joint tenancy is created, as to invest in the donee so much dominion and control of

---

[3] *Kata Estate*, 363 Pa. 539, 541, 70 A. 2d 351; *Romig v. Denkel et al., Exr.*, 326 Pa. 419, 192 A. 657; *Wilbur Trust Co. v. Knadler et al.*, 322 Pa. 17, 21, 185 A. 319; *Mader et al. v. Stemler et al.*, 319 Pa. 374, 377, 378, 179 A. 719; *Zellner's Estate*, 316 Pa. 202, 206, 172 A. 715. This is also the rule, even though the nomenclature of the account provides for payment of the account to the survivor: *Mader et al. v. Stemler et al.*, 319 Pa. 374, 179 A. 719, supra; *Grady v. Sheehan*, 256 Pa. 377, 100 A. 950; *In Re: Estate of Crist*, 106 Pa. Superior Ct. 571, 162 A. 478.

[4] *Martella Estate*, 390 Pa. 255, 258, 135 A. 2d 372, supra; *King Estate*, 387 Pa. 119, 122, 126 A. 2d 463; *Grossman Estate*, 386 Pa. 647, 649, 126 A. 2d 468; *Fell Estate*, 369 Pa. 597, 599, 600, 87 A. 2d 310; *Kata Estate*, 363 Pa. 539, 541, 70 A. 2d 351, supra. In the event of the production of a signature card or survival agreement executed by the parties the burden then "is upon the administrator to show, by evidence, which is clear, precise and indubitable, that the contract is not what it plainly says it is": *Fell Estate*, 369 Pa., supra, 599. While the burden of proof is on the claimant in the absence of a contract, yet if the claimant is a close relative, such as a daughter, less evidence to prove the gift is required than to prove a gift to a stranger: *Brightbill v. Boeshore*, 385 Pa. 69, 76, 122 A. 2d 38; *Watkins, Exr. v. MacPherson*, 348 Pa. 467, 471, 35 A. 2d 256; *Brown's Estate*, 343 Pa. 230, 241, 22 A. 2d 821; *Leadenham's Estate*, 289 Pa. 216, 221, 137 A. 247.

[5] *Martella Estate*, 390 Pa. 255, 258, 135 A. 2d 372, supra; *Grossman Estate*, 386 Pa. 647, 649, 650, 126 A. 2d 468, supra; *Brightbill v. Boeshore*, 385 Pa. 69, 74, 122 A. 2d 38, supra; *Chadrow, Exr. v. Kellman*, 378 Pa. 237, 242, 243, 106 A. 2d 594; *Tomkovic Estate*, 368 Pa. 487, 488, 489, 84 A. 2d 191; *Tomayko v. Carson*, 368 Pa. 379, 383, 83 A. 2d 907; *Rynier Estate*, 347 Pa. 471, 474, 32 A. 2d 736; *Mader et al. v. Stemler et al.*, 319 Pa. 374, 379, 179 A. 719, supra.

the subject matter of the gift as is consonant. to a joint ownership of interest therein".[6]

Weighed in the light of these principles claimant's evidence, both in quantity and quality, falls far short of the quantum of proof required to establish a gift inter vivos. All that claimant has shown is the mere fact that her name was added to the account—"John L. Balfour or Letitia Seitz"—and at that time the bank teller gave his opinion to both decedent and Letitia Seitz as to the legal effect of the change in nomenclature of the account without evoking any recalled response from either decedent or claimant.[7] Claimant failed to prove either donative intent and/or delivery.

*Isherwood, Exr. v. Springs-First National Bank*, 365 Pa. 225, 74 A. 2d 89, directly rules the instant case. In the *Isherwood* case the decedent opened a savings account in the joint names of herself and her daughter, the passbook reading "Mrs. Jennie Isherwood or Ruth Dowler". Decedent retained possession

---

[6] *Lochinger v. Hanlon*, 348 Pa. 29, 33 A. 2d 1; *Chapple's Estate*, 332 Pa. 168, 2 A. 719; *Mader et al. v. Stemler et al.*, 319 Pa. 374, 179 A. 719, supra; *Mardis, Admrx. v. Steen*, 293 Pa. 13, 141 A. 629; *In Re: Estate of Gallagher*, 109 Pa. Superior Ct. 304, 167 A. 476; *In Re: Estate of Orist*, 106 Pa. Superior Ct. 571, 162 A. 478, supra; *Tearpoak v. Tearpoak*, 85 Pa. Superior Ct. 470.

[7] The court below in its opinion stated: "After he (the bank teller) had explained that the account so labelled would carry with it the incidents of survivorship, the parties were satisfied and the change was made. This constituted an oral agreement and in the opinion of this Court was prima facie evidence that a gift inter vivos had been made and completed". The testimony upon which the court relied was as follows: "Q. Can you recall whether either or both of them (decedent and Letitia Seitz) said anything in answer to your statement? A. I can't recall". Query: how could this constitute an *oral agreement*? Even if it did, it would only be some proof of donative intent, not of delivery.

of the passbook until her death.[8]   There was no evidence of any signature card or that such had been executed.[9]   The bank's ledger sheet for this account had the following inscription: "payable to either or the survivor as joint tenants and not as tenants in common". There was oral testimony by the bank cashier that decedent wanted the account fixed so that in case of her death it would go to the daughter and that decedent understood that either one of them could draw it.[10]   Mr. Justice (now Chief Justice) Jones stated: "The evidence relied upon by the claimant in her effort to support the jury's implied finding that the bank account in suit was a joint estate with the right of survivorship fails to meet the legal requirements in the circumstances." (p. 229). In that case it was further stated, at p. 231: ". . . the claimant failed to produce evidence of the probative character required to sustain her burden of proving that the decedent affirmatively expressed or evidenced an intention to give her daughter at the time of the opening of the account . . . a presently vested interest therein or that she executed any such intention by an equivalence of delivery. Indisputably, there was no actual delivery of the passbook; Mrs. Isherwood retained possession thereof throughout her lifetime: . . . Nor was there either signed signature card or written agreement of the parties with respect to the ownership of that savings ac-

---

[8] The court below found as a fact: "At the time of the death of John L. Balfour, the bank book was found among his papers in his home and there is no evidence that it did not, at all times, remain in the hands and possession of said John L. Balfour".

[9] That the bank did not require signature cards in the instant case cannot supply the requirement that proof of donative intent is required to establish a gift inter vivos.

[10] This testimony was much stronger than the testimony of the bank teller in the instant case.

count: . . . . Just as in the Flanagan case, the memoranda on the bank's ledger sheet '. . . were made by an [employee] of the bank without evidence that the notations were made pursuant to direction given by decedent.' " See also: *Flanagan v. Nash*, 185 Pa. 41, 45, 39 A. 818; *Mardis, Admrx. v. Steen*, 293 Pa. 13, 16, 141 A. 629, supra; *Martella Estate*, 390 Pa. 255, 135 A. 2d 372, supra; *In Re: Estate of Crist*, 106 Pa. Superior Ct. 571, 580, 162 A. 2d 478, supra.

*Dempsey et al. v. First National Bank of Scranton*, 359 Pa. 177, 58 A. 2d 14; *Fell Estate*, 369 Pa. 597, 87 A. 2d 310, supra; *Mardis, Admrx. v. Steen*, 293 Pa. 13, 141 A. 629, supra; *Grady v. Sheehan*, 256 Pa. 377, 100 A. 950, supra, relied on by appellee, do not support her position. In all those cases, either by a signature card or other written agreement, the essentials of a gift inter vivos were proven.

Decree reversed. Costs on appellee.