**Ash Trust**

## OPINION SUR PETITION TO ENFORCE
## DELIVERY OF STOCK CERTIFICATE
## AND ANSWER THERETO

KLEIN, Adm. J., December 18, 1969.—Omar L. Ash and Juanita V. Ash are husband and wife. They have two sons, Stephen Vaughn Ash, born November 22, 1948, and Lawrence Miles Ash, born March 21, 1952. On May 22, 1967, while they were living together, Omar L. Ash executed under seal, and acknowledged before a notary public, a trust instrument in which he named his wife "Trustee" and recited that ". . . Settlor hereby delivers and makes payable to Trustee the assets listed in the schedule annexed hereto and made part hereof." A schedule of assets was attached which listed "600 shares of Common Capital Stock of Systems Capital Corporation." His wife also signed the document, signifying her consent to act as trustee and the executed trust instrument was delivered to her.

The instrument stated that the trust is irrevocable and provides for payment of income to settlor's two

sons for life, with the right to withdraw one-quarter of the principal held in trust for them upon reaching the age of 25 years, one-half of the balance upon reaching the age of 30 years, and all of the principal upon attaining the age of 35 years. Any principal remaining when a son dies is given to his then living issue.

Juanita V. Ash made demands upon her husband to transfer the 600 shares to her as trustee. He refused, whereupon she filed a petition for a citation directed to him to show cause why he should not deliver the shares to her, as trustee. The settlor filed preliminary objections to this petition which we sustained. An amended petition was thereupon filed to which a responsive answer was made.

On December 13, 1968, the court appointed Norman H. Brown, Esq., as guardian ad litem for Stephen Vaughn Ash* and Lawrence Miles Ash and trustee ad litem for all other unborn or unascertained persons having a possible interest in the trust.

A brief recital of the background of the formation of the Systems Capital Corporation would be helpful to place the issues in the case in proper focus. The company is a Delaware corporation. It was incorporated on April 6, 1967, with a capitalization of 10,000 shares of which 3,800 shares were issued to the settlor for which he paid $38,000 in cash on April 17, 1967. Although stock certificates were printed, no certificates were issued to Mr. Ash or to any of the other incorporators until December 1967, more than six months after the execution of the questioned trust instrument.

On March 28, 1968, the common stock was split 125 for 1. This split occurred immediately prior to the public offering of 150,000 shares of a total capitalization of 1,600,000 shares. On January 30, 1969, the

---

* Stephen Vaughn Ash is now 21 years of age.

common stock was again split on a 2 for 1 basis. By reason of these stock splits, the 600 shares involved in this dispute are now equivalent to 150,000 shares of the company. On November 7, 1969, the bid-ask price range for the stock was 6¼-6¾.

Subsequent to May 22, 1967, several shareholders' agreements were prepared by Systems Capital Corporation and submitted to its shareholders. The first agreement is dated June 6, 1967, and has signature lines for all of the shareholders, including a line for Omar L. Ash and one for Juanita V. Ash, trustee. Attached to this agreement form is a list of subscribers designated schedule A. It lists Omar L. Ash as owning 3,200 shares for a purchase price of $32,000. It also lists "Juanita V. Ash, Trustee, under Deed of Trust dated May 1967" for 600 shares, purchased for $6,000. Another shareholder's agreement was prepared in 1967, which lists "Juanita V. Ash, Trustee." This agreement bears the signature of Omar L. Ash. A third agreement was dated October 24, 1967. This agreement also lists "Juanita V. Ash, Trustee."

Two important facts are evident. One is that the value of the 600 shares has skyrocketed in about two and a half years from approximately $6,000 to perhaps $1,000,000; and second, that the settlor has had a serious falling out with his wife, as a result of which he has had a change of heart and refuses to deliver the stock to her for the purposes of the trust.

Mr. Latta, in behalf of Juanita V. Ash, the wife-trustee, and Mr. Brown, the guardian and trustee ad litem, contend that Omar L. Ash had made a valid, completed irrevocable gift of the stock to his wife, as trustee for the benefit of their two children, when he executed the trust instrument on May 22, 1967, and delivered the deed to the trustee, and that he should be compelled to transfer certificates for 150,000 shares of Systems Capital Corporation to her as trustee under that instrument.

Mr. Maloney, counsel for Omar L. Ash, maintains that the mere execution and delivery of the trust agreement does not establish a trust in the absence of actual delivery of the trust res to the trustee and, hence, does not create an enforceable obligation to deliver the stock shares.

Our courts have on many occasions stated that:

"To constitute a valid gift inter vivos two essential elements must combine: An intention to make the gift then and there, and such an actual or constructive delivery at the same time to the donee as divests the donor of all dominion over the subject, and invests the donee therewith": McClements v. McClements, 411 Pa. 257, 261 (1963); Thompson v. Curwensville Water Company, 400 Pa. 380, 384 (1960); Brightbill v. Boeshore, 385 Pa. 69, 74 (1956); Chadrow v. Kellman, 378 Pa. 237 (1954); Tomayko v. Carson, 368 Pa. 379 (1951); Rynier Estate, 347 Pa. 471, 474 (1943); Fitzpatrick v. Fitzpatrick, 346 Pa. 202 (1943); and Reese v. Philadelphia Trust, Safe Deposit & Insurance Company, 218 Pa. 150, 156 (1907).

It has been aptly said that the general principles of law with respect to inter vivos gifts are well settled, but that their application is sometimes difficult: Brightbill v. Boeshore, supra. Each case must be decided upon the circumstances attending the making of the alleged gift.

Of course, the perfect manner to make a gift of shares of a corporation is for the donor to execute a written assignment of the shares, to deliver the stock certificate to the donee and to cause the transfer to be noted on the books of the corporation. However, it is clear that less than the perfect transaction will serve to make a gift complete and effective. The courts have validated gifts of stock where the circumstances made it impracticable or impossible for donor to make actual delivery of the certificate to the donee at the time of the transaction.

A constructive or symbolic delivery of the property is sufficient to support a gift where the circumstances require that delivery be made in such form. This is the rule where the article intended to be given is not present, or, if present, is incapable of manual delivery, as where it is too bulky, or where it is property of an intangible nature. Thus, in some cases, an unequivocal declaration of gift, accompanied by a delivery of the only means by which possession of the article can be obtained, is sufficient: 38 C.J.S. Gifts §22.

In Murphy Estate No. 2, 53 D. & C. 315 (1945), our late respected colleague, President Judge Van Dusen, said at pages 316 and 317:

". . . Few of the cases referred to by the text writers deal with a gift by deed without delivery of property which was readily deliverable. In most of them delivery was not practicable. But the statement that such a gift may be made appears early in the books, and it is repeated from one writer to another, and in many opinions. It is on this proposition that exceptant must rely.

"No Pennsylvania case to which we have been referred deals with a simple gift by deed without any excuse for non-delivery. The usual statement by our courts is that which was adopted by the auditing judge. It is thus put in Mardis, Admx., v. Steen, 293 Pa. 13, 15, which dealt with the gift of a bank account:

" 'Where manual delivery is not practicable, a transfer may be made by assignment or by other writing or token which will indicate a present intention to pass right of possession to the donee.' "

The inter vivos gift of shares of stock where constructive and not actual delivery of the share certificate was made, has been upheld on many occasions. In McClements v. McClements, supra, the court held that the transfer of the shares of a corporation on its books was sufficient to constitute a valid gift from a father to his sons although there was no evidence of

actual delivery of the certificates of ownership. Mr. Justice Eagen said:

"Under certain circumstances, the transfer of the registration of stock ownership on the books of the corporation in itself constitutes a legal and sufficient delivery: Roberts's Appeal, 85 Pa. 84 (1877); Yeakel v. McAtee, 156 Pa. 600, 27 A. 277 (1893), and Marshall v. Commissioner of Internal Revenue, 57 F. 2d 633 (6th Cir. 1932). While it is true that the Pennsylvania Uniform Stock Transfer Act of May 5, 1911, P. L. 126, §21, 15 P.S. §321 (repealed 1953), provided that a person to whom a certificate of stock is issued is to be regarded as the real owner, this was not conclusive of the rights between a donor and a donee: Connell's Estate, 282 Pa. 555, 128 A. 503 (1925). See also, Chapple's Estate, 332 Pa. 168, 2 A. 2d 719 (1938).

"In the last mentioned case, the stock certificates were not assigned to the donee; a transfer of ownership was not made on the records of the company; the donor continued to receive the dividends and yet, this Court held that a valid gift inter vivos had been consummated and was established."

In Fey Estate, 2 D. & C. 2d 279 (O.C., Luzerne, 1954), a wife executed two forms assigning shares in a building and loan association, which were in her name, to her husband and herself jointly. The transfer was noted on the stubs of the certificates in the association certificate book. The stock certificates themselves were never presented to the association nor was a request ever made to the association to issue new certificates in place of the old ones. Judge (now Justice) Jones in a scholarly opinion reviewed the law pertaining to gifts inter vivos at considerable length and concluded that decedent had made a valid inter vivos gift to her husband who, upon her death,

became the owner of the entire interest in the shares. See also Millard Estate, 77 D. & C. 97 (1951).

There can be no quarrel with Mr. Maloney's contention that the mere execution of a trust agreement does not establish a trust in the absence of delivery of assets to the trustee and does not create an obligation to deliver the assets. We regard the many cases he cites in support of this position as inapposite, because we are of the opinion that a constructive delivery of the shares was made by the settlor to his wife, the trustee.

It is immaterial when making an inter vivos gift whether the donee is a relative, a stranger or a trustee. If the essential elements which constitute a valid gift are present, the gift is consummated. And once an inter vivos gift is complete, it cannot be revoked without the consent of the donee: La Rocca Trust, 411 Pa. 633 (1963); Thompson v. Curwensville Water Company, supra.

Moreover, it is well settled that when a gift is between a parent and children, as in the present case, it is regarded as a natural one and less evidence is required to establish the donative intent than when the transaction is between strangers. In Watkins, Exr., v. MacPherson, 348 Pa. 467 (1944), which involved an alleged gift of stock of a building and loan association, the court said at page 471:

"In Yeager's Est. 273 Pa. 359, 362, 117 A. 67, this Court stated: 'The quality and quantity of proof required to meet this obligation varies greatly, depending upon the circumstances of the particular case. Where the parties are strangers, the presumption against voluntary transfers is greater than in transactions between those holding more intimate relations. If the gift is from husband to wife (Crosetti's Est., 211 Pa. 490), or parent to child (Langdon v. Allen, 1

W.N.C. 395), the action of the donor is viewed as but natural, and less evidence is required to establish the intention . . .' "

See also McClements v. McClements, supra; Kaufmann Estate, 281 Pa. 519 (1924).

We are satisfied that when Omar L. Ash executed the trust instrument on May 22, 1967, he intended, then and there, to transfer 600 shares of Systems Capital Corporation to his wife, Juanita V. Ash, as trustee, for the benefit of his two sons, Stephen Vaughn Ash and Lawrence Miles Ash. His action in making the gift was most natural. He was in on the ground floor of the operation of a new corporate venture which had tremendous potential for substantial capital appreciation. He could share these profits with his two sons at little cost before the stock of the company was sold to the public. The amazing skyrocketing of the values of the shares fully justified his expectations.

Since no share certificates had been issued by the company on the date of the execution of the trust instrument, Mr. Ash did everything that he could at the time and under the existing circumstances to make a complete, executed gift of the shares. He clearly intended to make the gift then and there and made a constructive delivery of the shares to the donee, his wife-trustee, so as to divest himself of all dominion over them and to invest the donee therewith. We regard the three shareholder's agreements which were submitted to Mrs. Ash for her signature subsequent to the execution of the deed of trust as clear and unequivocal evidence that a gift of the 600 shares had been made to the trustee. These agreements establish that either the shares had actually been transferred on the books of the Systems Capital Corporation, or that the officers of the corporation and their counsel had evidence they considered satisfactory

that a valid transfer of the shares had been made by Omar L. Ash to his wife as trustee.

We therefore, rule that Omar L. Ash made a complete, valid gift of 600 shares of common stock of Systems Capital Corporation to Juanita V. Ash, his wife, as trustee, effective May 22, 1967.

Accordingly, we enter the following

### DECREE

And now, December 18, 1969, the prayer of the petition of Juanita V. Ash, trustee, is granted and Omar L. Ash, the respondent, is ordered and directed to deliver forthwith to the said Juanita V. Ash, as trustee, under the deed of trust dated May 22, 1967, 150,000 shares of the common stock of Systems Capital Corporation, to be held and administered by her pursuant to the terms and conditions set forth in said deed of trust.

### SUR EXCEPTIONS TO THE OPINION AND DECREE OF THE HEARING JUDGE

Before Klein, Adm. J., Bolger, Lefever, Saylor and Shoyer, JJ.

*Pepper, Hamilton & Scheetz,* for exceptants.

*Drinker, Biddle & Reath,* contra.

*Norman H. Brown,* guardian and trustee ad litem.

SHOYER, J., March 26, 1970.—The findings of fact by the learned hearing judge (1) that settlor then and there intended to make an irrevocable gift of 600 shares of Systems Capital Corporation stock when he delivered to his wife the formal deed of trust which he had personally signed, sealed and acknowledged, and (2) that Mrs. Ash unconditionally accepted the same as trustee when she affixed her signature in the presence of a witness, are amply supported by the evidence.

Respondent's admission that no stock certificates

were issued by the corporation to anyone until December 1967, fully justifies the court's holding that delivery of the certificate concurrently with the deed of trust was impracticable, so that, under the existing circumstances, there was a constructive delivery of the res which was legally binding. This rule of law is firmly supported by cases and text writers alike. To the Pennsylvania authorities relied on by the learned hearing judge may be added the New York cases of Cohn's Will, 187 App. Div. 392, 176 N.Y. Supp. 225 (1919), and Spain's Estate, 46 N.Y. S. 2d 789 (Surr. Ct., Westchester County, 1944). See also 5 Scott, Trusts, 3rd ed., §§32, 32.2 and §466.

Counsel for respondent contends that all the Pennsylvania cases which uphold an inter vivos gift are instances where the court leaned forward to carry out the wishes of a deceased donor. A distinction may be observed based upon the relationship of the parties. Tomayko v. Carson, 368 Pa. 379 (1951), and cases cited therein have disallowed such claims for want of evidence which was *clear, convincing and satisfactory,* where the donee was not related to decedent. But where the transfer is to a wife or children, less evidence is required because the gift is a natural one. Thus, in Chapple's Estate, 332 Pa. 168 (1938), where there was a delivery of the stock certificates to the son, but no written assignment, no transfer on the books of the company, and the donor continued to receive dividends, it was held that a valid gift inter vivos had been made.

The shareholders' agreements which were prepared to assure fair dealing among the six existing shareholders confirm the findings of fact and uphold the conclusion of law made by the learned hearing judge. The insertion of a signature line for "Juanita Ash, tr.", as one of the very limited number of original shareholders, by counsel who represented the newly

born corporation obviously resulted from information contained in the official record of stockholders, or some alternative source no less authoritative.

Respondent's counsel argues that the wife's failure to sign the shareholders' agreement which Mr. Ash presented to her warranted his refusal to complete the gift by delivery of the stock. Since respondent, though present at the hearing, did not choose to testify, this argument lacks even an ipse dixit for its support. The learned hearing judge was correct in deeming it but an *excuse* for not handing over the stock, and not a legitimate *condition* of its delivery.

Accordingly, the exceptions are dismissed and the decree of the learned hearing judge is confirmed absolutely.