414 A.2d 1052

**In re M.A.K. and R.L.K., minors.**

**Appeal of ALLEGHENY COUNTY INSTITUTION DISTRICT.**

Supreme Court of Pennsylvania.

Argued March 11, 1980.

Decided May 30, 1980.

598

James H. McLean, County Sol., Cheryl Allen Craig, Asst. County Sol., Pittsburgh, for appellant.

Rosalia G. Parker, Neighborhood Legal Services, Pittsburgh, for Mrs. Mercedes Kelly-mother.

Shari F. Shink, Child Advocacy Division, Pittsburgh, for intervenors Mercedes Ann Kelly and Rebecca Lee Kelly, minors.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

On November 20, 1978, appellant, Allegheny County Institution District (the Agency), filed a petition for the involuntary termination of parental rights and duties of appellee, M.A.K., the natural mother, to her children M.K. and R.K. After a hearing on March 12, 1979, both parties filed posttrial briefs, and, on April 11, 1979, the chancellor or hearing judge entered a decree nisi terminating the parental rights of M.A.K. to M.K. and R.K.[1] M.A.K. filed exceptions to the decree. After oral argument, the court en banc reversed the decree nisi and entered a final decree dismissing the petition for involuntary termination of parental rights of M.A.K. The Agency filed this appeal.

The Agency complains the court en banc abused its discretion in reversing the decree of the chancellor since it was supported by competent evidence sufficient to justify termination of M.A.K.'s parental rights. If the court en banc was in disagreement with the chancellor before whom the witnesses appeared, there might be merit in this argument, but the Agency has overlooked an important fact, i. e. the chancellor was a member of the court en banc and joined both its findings and final decree. "A chancellor, who

---

1. The parental rights of the natural father were also terminated in this proceeding. The father has not challenged the ruling.

initially makes findings of fact may subsequently join as a member of a court en banc in making . . . contrary finding[s], if the ultimate finding[s are] supported by adequate evidence: *Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618, 136 A.2d 838 (1957)." *McClements v. McClements*, 411 Pa. 257, 262, 191 A.2d 814, 816 (1963). "It is the final decision of the chancellor which is to be considered. . . . [T]he last statement made is to be treated as his deliberate conclusion." *Piacentino v. Young*, 272 Pa. 556, 560, 116 A. 407, 408 (1922). Based on our previous decisions, if the findings of fact of the court en banc are supported by competent evidence, these findings are entitled to the same weight as a jury verdict, and must be sustained unless the court en banc abused its discretion or committed an error of law. *In re Adoption of J.A.B.*, 487 Pa. 79, 408 A.2d 1363 (1979); *In re William L.*, 477 Pa. 322, 383 A.2d 1228 (1978), cert. denied 439 U.S. 880, 99 S.Ct. 216, 58 L.Ed.2d 192. However, the court's inferences and deductions are subject to review. *In re Adoption of J.A.B.*, supra.

The record in the instant case reveals the parents of M.K. and R.K. were married February 14, 1966 and divorced April 27, 1973. The parents separated some time prior to the divorce, and the mother, M.A.K., has not remarried. On July 21, 1970, M.A.K. requested the Agency to provide shelter for three of her children, including M.K. and R.K., because she was being evicted from her living quarters and could not care for them. Later, the Agency petitioned the court to have the children adjudged dependent and committed to the custody of the Agency because of M.A.K.'s instability, her failure to make a suitable plan for the children, and the possible danger to the children arising from the natural father's presence in the home. In December 1970, M.K. and R.K. were placed in separate foster homes. On April 21, 1971, the court adjudged the children dependent and committed them to the custody of the Agency.

From late 1974 through 1975, M.A.K. followed a regular visitation schedule with M.K. and R.K. in cooperation with the Agency pursuant to a plan for reunion of the family.

Although the children were to be returned to M.A.K. during the summer of 1975, the Agency reversed its position and advised M.A.K. to seek legal counsel if she wished the children returned to her. With the financial and personal support of her son-in-law, who lived in her home, M.A.K. did retain an attorney and filed a petition with the court seeking return of the children to her custody. After hearings in December 1976, the court denied her petition. The hearing judge decided the best interests of the children would be served by having them remain with their respective foster parents because of the excellent relationship which had developed between the children and their foster parents. The judge further found:

"In Mrs. K's favor, the evidence established that Mrs. K. genuinely desires the return of her three children. Furthermore, if the children are returned to Mrs. K., they will receive proper care and over time it is possible that a close parent-child relationship will be established. Mrs. K. lives in a large, nicely furnished home adequate to house [a third child in placement, M.K., and R.K.] and her income is adequate to meet their material needs. Mrs. K. has done a fine job of caring for her three children who were returned three and one-half years ago. A good family relationship has developed between Mrs. K. and these three children. These are personable, well-adjusted children who are progressing well in the home, schools and community. Each child is very pleased to have returned to Mrs. K. and the present K. family was described by a Child Welfare Services social worker as a healthy, normal family.

"If counsel for Mrs. K. requests, this Court will conduct further proceedings to determine the feasibility of establishing visitation procedures designed to develop such a relationship. Obviously, however, any visitation procedures that are adopted must consider the interests of the children."

*In re: John F. et al., Minors*, 125 P.L.J. 67, 72 (1976).

Two days after the final day of hearings on M.A.K.'s petition for custody, her son-in-law committed suicide in the

basement of her home. M.A.K. discovered his body and subsequently experienced what she characterized as a nervous breakdown. She was treated on an out-patient basis for three months at Western Psychiatric Institution. During this period, she was able to care adequately for the three children residing at home with her. Also during this period, the Agency sent M.A.K. letters scheduling visits with the children on three different · occasions. In each instance, M.A.K. telephoned the Agency to report she would not be able to keep the appointment. She was then advised, by letter, that, if she wished further visitation, it would be her responsibility to initiate contact with the Agency. M.A.K. testified she attempted to contact her children after the custody hearings, but was unsuccessful and found the Agency uncooperative. She further testified she sent Valentine, birthday, and Christmas cards to the children after February 1977.

Apparently, M.A.K. was never advised that failure to visit her children for six months might result in termination of her parental rights. The court noted the Agency, which had been supportive of M.A.K. before the custody hearings, discontinued its active interest after she failed to regain custody, just at a time of great personal crisis for M.A.K.

Based on this evidence, the court concluded that the particular circumstances in M.A.K.'s life created a crisis leading to her temporary failure to perform parental duties for six months; that she exercised reasonable firmness in declining to yield to obstacles; and, that termination of her parental rights was not warranted under the circumstances.[2] *In re Adoption of J.A.B.*, supra; *In re Adoption of P.*, 475 Pa. 197, 380 A.2d 311 (1977); *In re Adoption of Orwick*, 464 Pa. 549, 347 A.2d 677 (1975). There is competent evidence in

2. The initial decree terminating parental rights was based on a failure to perform parental duties from the end of March of 1978 when out-patient care for M.A.K. terminated until November 20, 1978 when the termination petition was filed. The court en banc, in effect, found the crisis in M.A.K.'s life continued despite termination of out-patient treatment, and there is adequate evidence in the record to support this finding.

the record to support these findings, and the conclusions are supported by these findings. They will not, therefore, be disturbed.[3] In view of these findings and conclusions, we cannot say the final decree was legally in error or constituted an abuse of discretion.

Decree affirmed. Each side to pay own costs.

3. Child Advocacy Legal Aid submitted an *amicus* brief asserting the claim that children who are the subjects of termination of parental rights proceedings should be extended the right to independent counsel. We have previously decided the court may, in its discretion, appoint counsel or a guardian for a child so situated if it determines such representation either is necessary or would be beneficial. *Matter of Kapcsos*, 468 Pa. 50, 360 A.2d 174 (1976).